GEORGE A. STEPHENSON *vs.* RESOLVED W. CADY.

Suffolk.  Nov. 12, 1874. — Jan. 11, 1875.  WELLS & DEVENS, JJ., absent.

Where executory contracts are made on different days for the sale of goods, the
price of which is to be payable on delivery, and the deliveries under the second
contract are by its terms to commence when the full quantity required by the first
has been shipped, the purchaser cannot, after refusing to pay for goods delivered
under the first contract unless the seller will give security for the entire fulfilment
of the contracts, maintain an action for non-delivery under the second contract.

CONTRACT for non-delivery of yarn under the following agree-
ments in writing, each of which was signed " Greystone Mills,
Zebulon Whipple, Agent."

" Boston, October 23, 1871.  Sold Stephenson & Co., Agents,
three thousand pounds 12½ yarn at 31½ cents per lb.  Cash on
delivery.  Also, two thousand pounds 12½ yarn at 31⅓ cents per
lb., cash on delivery, deliverable at my option or not, as I think
best.  Yarn to be same quality and twist as sold them heretofore,
to be delivered on cars at Providence as before."

" Boston, November 14, 1871.  Sold Stephenson & Co., Agents,
five thousand pounds No. 12½ yarn at 31 cents, cash on delivery ;
to be delivered on board cars at Providence, at the rate of twelve
hundred pounds per week, to commence as soon as the 2,500 lb.
12½ now due them has been shipped ; quality as heretofore."

" Boston, November 25, 1871.  Sold Stephenson & Co., Agents,
three thousand pounds twenty-six two-ply yarn at 40 cents per
pound, and five thousand pounds twelve two-ply yarn at 32 cents
per lb., to be delivered on cars at Providence ; quality as hereto-
fore ; cash on delivery ; 1 % off ; all to be delivered before Jan-
uary 1, 1872."

Trial in the Superior Court, before *Brigham*, C. J., without a
jury, who allowed a bill of exceptions in substance as follows :

The defendant made with the plaintiff the contracts alleged in
the declaration ; and between October 24, 1871, and November
28, 1871, made nineteen deliveries of yarns under the second and
third contracts, — all of the yarns required under the first con-
tract, excepting 445 pounds, and 496¼ pounds of twenty-six two-
ply yarns under the third contract, — and upon these deliveries,
which were accompanied by bills of each parcel delivered, marked

" cash," the defendant drew thirteen sight drafts on the plaintiff, for sums of from $150 to $400, all of which drafts were duly paid by the plaintiff, excepting a draft for $400 drawn by the defendant on the plaintiff, on November 29, 1871, refused acceptance on December 2 following, and payment on December 5 following, by the plaintiff, and duly protested for non-acceptance and non-payment. The drafts were not drawn for the exact sum due at the time, but for sums approximating to the sums then due.

The plaintiff and the defendant accounted together in the matter of the deliveries and payments on November 25, 1871, and their accounts to that date were then settled by an " allowance " to the plaintiff of $20.40, and his payment of $19.84 in cash to balance the accounts.

On November 27 and 28, 1871, the defendant made deliveries of yarns under the contracts to the plaintiff, the contract prices of which were $260.71 and $148.81, and thereupon drew the draft of $400 on the plaintiff, and the same was refused acceptance as aforesaid.

The defendant's mill, in which the yarns had been and were expected to be manufactured, was burned on the morning of December 1, 1871.

On December 2, 1871, the plaintiff sent to the defendant's agent in the contract, Zebulon Whipple, the following letter :

" Boston, December 2, 1871.  Z. Whipple, Agent    Dear Sir : We were very much pained and surprised last night to notice by the paper that the Greystone Mills were burned yesterday morning, though we are glad to notice they were well insured.  We see you owe us some 10,500 lbs. 12½, and 2,500 lbs. 26½ yarn, on contract.  This yarn is sold or engaged, and we look to you to deliver it.  Please let me know what arrangement you are making to do so.  Under these circumstances, we have not paid your draft for $400.  We hope you can arrange to send us some 2,500 lbs. 12½ per week, that quantity being required to complete the contract by January 1.  Yours truly, Stephenson & Co., Agents."

On December 8, following, Whipple called upon the plaintiff in Boston, to pay the price of the parcels of yarn delivered to him on November 27 and November 28, and the plaintiff refused to pay the same unless the defendant would give him security for the entire fulfilment of the contracts ; Whipple thereupon de-

clared to the plaintiff that the defendant was under no legal obli-
gation to fulfil the contracts, inasmuch as the plaintiff had violated
them by refusing to accept or to pay the draft of $400. There-
upon, Whipple sued out of the Superior Court a writ in favor of
the defendant against the plaintiff in an action of contract for
the price of the yarns delivered to the plaintiff on November 27
and on November 28, and was proceeding to attach the plaintiff's
stock in trade, when the plaintiff, to avoid the service of the writ
by attachment, paid to him the sum of $409.52, the full price
of the yarns delivered on November 27 and on November 28.
Whipple and the plaintiff then parted angrily, and without any
agreement or understanding as to further deliveries of yarn under
the contracts, the plaintiff claiming a right to such deliveries, and
the defendant denying such right, and no communication was had
between them until on January 4, 1872, the plaintiff caused to
be delivered to Whipple the following letter : " Boston, January
3, 1872. Z. Whipple, Agent. Dear Sir: We want all the
yarns due us on our contracts with you, and we again call on you
to deliver the same. The delay in sending them has caused us
great inconvenience. Yours truly, Stephenson & Co., Agents."

No deliveries of yarns under the second contract were ever
made by the defendant to the plaintiff, and no deliveries of yarn
under the first and third contracts were made after November 28,
1871. At the time of making the second contract the defendant
notified the plaintiff that he accepted the option, mentioned in
the first contract, of delivering all the yarn required thereby.

On these facts the judge ruled that the action could not be
maintained, and found for the defendant ; and the plaintiff al-
leged exceptions.

*H. H. Currier*, for the plaintiff.

*H. M. Rogers*, for the defendant.

COLT, J. This is an action to recover damages for the defend-
ant's refusal to perform the contracts declared on. The defence
is that the plaintiff himself failed to perform his part of the
agreements.

The three contracts were made on three different days, for the
delivery of given quantities of yarn at a price named to be paid
for on delivery. Part deliveries were made from time to time
under the first and last contracts, and all these deliveries except

the last were paid for at the time. By the terms of the second contract the deliveries under it were to commence when the quantity required by the first had all been shipped. And the question whether the plaintiff can recover anything for refusal to deliver under the second contract depends therefore on whether the conduct of the plaintiff justified the defendant's refusal to perform the first.

All the contracts are executory agreements for the sale of goods to be thereafter manufactured in the defendant's mill; they contain stipulations which impose upon one party the obligation to deliver, and upon the other the obligation to pay on delivery, and which are to be regarded as concurrent and mutually dependent conditions. Neither can maintain an action for the neglect and refusal of the other, without showing performance or its equivalent on his part. Payment must keep pace with delivery. The natural construction of the contracts, as applied to the subject matter, implies that the goods were to be delivered as they were manufactured from time to time. And this construction is confirmed by the course of dealing, the deliveries and payments, and the settlement between the parties.

The case was tried by the court without a jury, and we are of opinion that the refusal of the plaintiff to pay for a delivery of yarn which had been made under the contract, " unless the defendant would give security for the entire fulfilment of the contracts," was, under the circumstances disclosed, sufficient to warrant a jury in finding the defendant justified in treating the contract as abandoned by the plaintiff, and as ended in its unfulfilled obligations upon him. It was a refusal to execute a substantial part of the agreement; an attempt, by holding on to the property without payment, to impose an onerous condition not contemplated by the original contract, and to which the defendant was not required to submit, so long as he was without default. It was something more than a refusal to pay for a single delivery. It was broad enough to be treated as a general refusal to make any further payments. It was prospective in its character, and was made with notice that such refusal would be regarded as releasing the defendant from all obligation to fulfil. Conduct less decisive has been held to justify non-performance by the other party to the contract.

In *Withers* v. *Reynolds*, 2 B. & Ad. 882, the plaintiff, being obliged by his contract to pay for straw, for each load delivered on his premises, was in arrear for several loads ; the defendant called on him for payment for what had been delivered ; the plaintiff tendered the price except for the last load, saying that he should always keep one load in hand. Assumpsit was brought for not delivering straw to the plaintiff pursuant to the agreement. Lord Tenterden says : " I am of opinion that the plaintiff is not entitled to recover. There is, I think, no doubt that by the terms of this agreement the plaintiff was to pay for the loads of straw as they were delivered." " Then the only question is, whether upon the plaintiff's saying ' I will not pay for the goods on delivery,' (for that was the effect of his communication to the defendant,) it was incumbent on the defendant to go on supplying straw ; and he clearly was not obliged to do so."

This is followed in the very recent case of *Bloomer* v. *Bernstein*, L. R. 9 C. P. 588, in which it is held that where there is a contract for the sale of goods to be delivered by instalments, the price of each instalment being payable on delivery, and the buyer does not pay for one delivery under such circumstances as to give the seller reasonable ground for believing that he will be unable to pay for the future deliveries, and that he does not intend to go on with the contract, the seller is justified in repudiating it. See also *Fletcher* v. *Cole*, 23 Vt. 114 ; *Webb* v. *Stone*, 4 Fost. 282 ; *Winchester* v. *Newton*, 2 Allen, 492 ; *Star Glass Co.* v. *Morey*, 108 Mass. 570, 574.

There is no legal objection to the finding and judgment of the Superior Court.                              *Exceptions overruled.*