JOHNSON FORGE COMPANY, a corporation of the State of Delaware, defendant below, plaintiff in error, *vs.* JOHN LEONARD and MICHAEL BLAKE, trading as JOHN LEONARD & CO., plaintiff below, defendant in error.

*Contract of Sale—Payment in Installments—Divisibility—Default— Rescision—Acts and Conduct of Party in Default— Questions of Law and of Fact.*

1.   A contract for the sale and delivery of a specific quantity of iron, requiring payment in installments on the delivery of each 100 tons is a contract of sale which is entire on one side and apportionable on the other.

2.   In contracts of this nature if there be a default by one party in making stipulated payments or deliveries, accompanied with an announcement of intention not to perform the contract upon the agreed terms, the other party may treat the contract as being at an end.

3.   Where the buyer under such contract, on demand being made for payment after delivery of the first installment, by letter replies : " In regards to remitting, we will not remit for this lot until we get enough of the balance of the contract in our hands to know that we will receive the amount we have purchased.   We will therefore thank you to rush forward the whole contract with the class of iron that is now here, and which will be satisfactory,"—such letter evinces an intention to repudiate the contract, justifying a rescission by the sellers.

4. The interpretation and effect of such letter were questions of law for the Court.

5. The intention to be gathered from the acts and conduct of the party in default of a contract of this sort, may, under the facts and circumstances of the particular case, be a question of fact for the jury.

(*January 21, 1902.*)

NICHOLSON, Ch., and PENNEWILL and BOYCE, J. J., sitting.

BENJAMIN NIELDS and JOHN P. NIELDS for plaintiff in error.

*Charles M. Curtis* for defendants in error.

Supreme Court, June Term, 1901.

WRIT OF ERROR to the Superior Court for New Castle County.

BOYCE, J., delivering the opinion of the Court :

The plaintiffs brought their action of *indebitatus* assumpsit for the recovery of the value of the scrap iron delivered to the defendant under the following contract:

" NEW YORK, February 25, 1899.
" Sold to Johnson Forge Co., Wilmington, Del., for account of Messrs. Jno. Leonard & Co., about three hundred (300) tons number one wrought scrap iron, delivered f. o. b. cars at the works of the buyer (provided the cars can make a delivery at their works) price : fourteen and one half (14.50) dollars per ton of 2240 lbs. Cash payable on receipt of each hundred (100) tons."

"GEORGE H. JONES, *Broker.*"

" Accepted March 1, 1899."

Counsel for the buyer admits that between the time of the execution of the said contract and the 29th day of June following, there were shipped to and accepted by it four cars of said iron, aggregating one hundred tons or more. The correspondence shows that during this period seven cars were shipped; and that three of them were rejected because of quality, and afterwards returned or taken away. He alleges that the sellers were caught in a rapidly rising market and that because of this it was to their interest to get rid of the contract, while for the same reason the buyer was naturally desirous of holding the sellers to their contract. The record is silent as to the evidence upon this point.

On the 28th of June the sellers wrote to the buyer, requesting "check for our account as per contract," and on the following date the buyer replied : " *   *   * In regards to remitting, we will not remit for this lot until we get enough of the balance of the contract in our hands, to know that we will receive the amount we have purchased. We will, therefore, thank you to rush forward the whole contract with the class of iron that is now here and which will be satisfactory, and as soon as we have two or three cars over and above the 100 tons upon which payment is to be made, we will remit you check."

On the next day the sellers wrote : " *   *   * We would say that that is not our agreement: If you will look over your contract you will find that you are to remit on receiving each 100 tons, and we want the check immediately for the 100 tons of scrap iron shipped you. If not sent immediately, we will put the matter in the hands of our attorney for collection." And they did not subsequently make any other shipments, or offer to make any, nor does it appear that they again wrote to the buyer relative to the breach. The buyer, however, on July 11th, following, wrote : " *   *   * We are therefore ready and willing to pay your bill if we have an assurance you will complete your contract. If you will, therefore, send us one or two carloads of same quality as the last, as soon as it

received, we will send you check for what has been delivered, * * * We are much in want of the scrap purchased of you and request you to complete your contract at once, and you will receive payment as originally understood." And again, on August 9, wrote: " * * * Unless you commence shipping on the above quantity by the 15th inst., we will go into the market and purchase the above quantity at the very lowest price we are able to get it at, and will charge any difference in the price to your account over and above our contract with you."

The sellers brought their said action on the 15th day of September following.

Counsel for the buyer admitted the sellers' right of action for the one hundred tons of iron delivered and accepted, but denied their right to rescind the contract; and by way of recoupment set up a counter claim to an amount exceeding the demand of the sellers for the failure of the latter to deliver the remaining two hundred tons of iron sold. He also conceded that the right to counter claim depends upon the existence of a subsisting contract, and that if there had been a repudiation in fact of the contract at bar, and that by reason thereof the contract had been rescinded, then the right to counter claim did not exist.

He contended that the default made in the payment for the said one hundred tons, received and accepted, was not a breach of a condition precedent, nor was it such a breach as that it affected the whole of the consideration. And that, therefore, the sellers were not discharged from deliveries yet remaining due from them. He also alleged that it was a question of fact for the determination of the jury whether the words and conduct of the buyer amounted to a repudiation of its contract, justifying rescission on the part of the sellers.

The sellers regarding the conduct of the buyer as a repudiation of the contract, justifying their rescission, by their counsel denied the right of the buyer to set up its counter claim, and insisted that the question of repudiation involved in the case as well

as the character of the evidence produced to establish it were matters of law for the Court.

The defendant requested the Court below to charge : " That if the jury shall believe from the evidence that the acts and conduct of the defendant as shown in this case, did not evince an intention no longer to be bound by, or do not show an intention wholly to abandon the contract of February 25th, then the defendant is entitled to recoup by way of counter claim to plaintiffs' demand such damages as it suffered by reason of the plaintiffs' failure to deliver 199 tons and 1780 pounds of said iron under said contract."

The Court in their charge to the jury, *inter alia*, said :—

" We decline so to charge, for the reason that it would be submitting to the jury, as a question of fact, that which has already been decided as a question of law by the Court in its rulings upon the admissibility of evidence upon that point. We have seen no reason to change our view in this respect." * * * "This" (defendant's letter of June 29th) "was a demand that the plaintiffs should put into the hands of the defendant, two or three cars over the one hundred tons, by way of pledge or guaranty for the performance of the contract, as a new condition for the payment already due thereunder, and was insisting upon new terms, different from the original agreement which was, ' cash payable on receipt of each one hundred tons.'

" Under this admitted state of facts the Court held as a matter of law, that the plaintiffs were relieved from further delivery by such a refusal under the circumstances."

There are three assignments of error, based substantially upon that part of the charge which we have quoted, and they present two distinct questions for our determination.

1.   Whether the act and conduct of the defendant amounted to a repudiation of the contract, justifying a rescission.

2. Whether the determination of that question is one of fact for the jury.

Before proceeding to consider these questions, it may not be inappropriate to determine the nature and character of the contract before us ; for one among the several reasons which may be assigned for the conflict in the decisions touching contracts of this sort is the difficulty, at times, in determining the question of the divisibility of the promise in the particular case. Whether the contract is entire or severable is frequently a matter of interpretation, depending on the intention of the parties to be gathered from their acts, under all the facts and circumstances of the particular transaction.

The contract in this case is clearly an illustration of a contract of sale which is entire on one side and apportionable on the other, *i. e.*, a contract for the sale and delivery of a specific quantity of scrap iron, about three hundred tons, without doubt to be de-delivered within a reasonable time, in carload lots, to be paid for in equal installments of one hundred tons.

*Mersey Steel Co. vs. Naylor, 9 App. Cas., 434 ; Norrington vs. Wright, 115 U. S., 188.*

And it is a divisible contract *in the sense* that an action may be maintained for the recovery of the value of each one hundred tons of the iron, upon the delivery and acceptance thereof, if payment should be neglected or refused; for where the seller delivers an agreed portion which the buyer accepts, and payment thereof becomes immediately due, the right to recover is at once complete.

*Pope vs. Porter, 102 N. Y., 362.*

Hence the effect of such a breach as has been shown in this case, if nothing else, was to confer a right of action upon the sellers for the installment delivered. But whether the injured party should bring his action upon the contract for part performance where his right of action has become complete by reason of the divisible character of the contract, or for the value of a benefit

conferred upon the defaulting party where the breach of the latter clearly operates as a discharge of the contract, the right of recovery is distinguishable; for in the first instance the remedy of the injured party is upon the contract, while in the latter his right to recover is founded upon a promise imposed by law.

The action brought in this case is of the latter kind.

In contracts of the nature of the one before us, it is, indeed, often quite difficult to determine whether or not a particular breach of one of the provisions or series of items therein by one of the parties in the course of performance discharges the injured party, but, in the absence of express stipulations to the contrary, it seems to be quite generally maintained, at least by the better considered cases, that a breach which only deprives the injured party of a benefit of one of these subsidiary provisions or promises will not as a rule relieve him from such further performance as may be due from him under the contract; and he is left to redress his injury by an action for compensation in damages.

We come now to consider specifically the questions raised by the errors assigned. And we will first consider not whether the act and conduct of the buyer showed an intention no longer to be bound by the contract, but whether the question of intention, whatever it was, was a matter of evidence for the jury. While under the facts and circumstances of the particular case, the intention to be gathered from the acts and conduct of the party in default may be a question of fact for the jury, yet in this case we are clearly of the opinion that the interpretation and effect of the said letter of June 29th were questions of law for the Court.

Whether the effect of said letter amounted to a repudiation of the contract, justifying a rescission on the part of the sellers, presents a question, in view of the conflicting decisions in both this country and England, which is at best unsettled. Very much of the difficulty which has led to the want of harmony in the decisions seems to be the natural result of the failure to adopt any uniform rule of construction with reference to the relation which the

subsidiary promises contained in this class of contracts bear to each
other, and the subsequent effect of a breach of one of them upon
the whole contract. Some of the cases seem to have regarded these
stipulations as independent of each other, while others have treated
them as conditional. Other decisions have regarded *time* of per-
formance and *payment* according to stipulations, particularly the
latter, as severally entering into the essence of the contract; and
cases exactly alike in all material facts have been decided differently
for these and other constructional reasons.

We have quite carefully examined many of the leading cases
upon this question, and we do not deem it necessary or useful for
the purpose of this case to attempt to distinguish or reconcile them.
Indeed, as was said by Lindley, L. J., in the Court of Appeals, in
the case of *Mersey Steel Co. vs. Naylor*, (*p. 666*), in referring to
certain cases, each case may be understood by itself, but there is a
very considerable difficulty in reconciling them.

There is conspicuous authority for the rule that a breach of
contract of this sort which does not go to the entire consideration will
not sustain a rescission. By this rule compensation in damages for
a breach less pronounced in its character is substituted for the rem-
edy afforded by rescission. And this was the position assumed by
the learned counsel for the plaintiffs in error, which he urged upon
the attention of the Court with so much learning and ability. It
seems to us, the courts may often by force of such a rule create
for the parties to the particular contract another differing essentially
from that which was originally intended; and besides the effect of
the adoption of such a rule must be to negative the wholesome
stimulus to observe the several subsidiary promises contained in
these contracts which lies in the remedy of rescission. While it is
quite impossible to lay down any absolute rule for guidance in all
cases of this character under the varying facts and circumstances
of the particular case, yet, in our opinion, the rule that will best
promote the important commercial interests involved in contracts
of this nature and one that will work out the most benefical re-

sults in accordance with reason and justice is that if a default by
one party in making particular payments or deliveries (except in
cases of neglect, omission or inadvertence) is accompanied with an
announcemont of intenion not to perform the contract upon the
agreed terms, or if, in the language of the Court below, the default
is accompanied with a deliberate demand "insisting upon new
terms different from the original agreement", the other party may
treat the contract as being at an end.            ·

Anson on Contracts, 283; Withers vs. Reynolds, 2 Barn. &
Adol., 882; Stephenson vs. Cady, 117 Mass., 6; Blackburn vs.
Reilley, 47 N. J. Law, 47.

We may further add that non-payment or non-delivery will
not of itself ordinarily be sufficient to warrant a rescission.   Yet
under the particular facts and circumstances of the case such a de-
fault may be evidence of an intention no longer to be bound by
the agreed terms of the contract.

It is our opinion that the fair and reasonable import and legal
effect of the refusal to pay for the iron for the recovery for the
value of which this action has been brought, accompanied, as it
was, with the announcement that "in regards to settlement, we
will not remit you for this lot until we get enough of the balance
of the contract in our hands to know that we will receive the
amount we have purchased", evinced an intention no longer to be
bound by the terms of the contract.   It is true that in said letter
the buyer further said, "We will, therefore, thank you to rush
forward the whole contract with the class of iron that is now here
and which will be satisfactory;" but in ordinary contracts of this
nature the party defaulting in the manner and to the extent which
we have laid down may not escape the penalty of his act of repu-
diation which the right of rescission inflicts by manifesting at the
time of the default a desire to have the injured party continue the
performance, notwithstanding such default.   The intention of re-
pudiation under such circumstances, if in fact it exists, is none the

less manifest because, perchance, the party in default may urge a continuance of performance.

It may be added to what has already been said that the plaintiff in error greatly relied on the cases of *Mersey Steel Co. vs. Naylor, 9 App. Cas., 434; 9. Q. B. D., 648;* and *Freeth vs. Burr, L. R. 9, C. P., 208,* while the defendant in error in like manner relied upon *Withers vs. Reynolds, 2 Barn. & Adol., 882.*

The facts in *Mersey Steel Co. vs. Naylor* were: Defendants agreed to purchase from the Mersey Steel Company a large quantity of steel booms to be delivered in monthly installments, payment to be made within three days after receipt of shipping documents. When about half of the first installment had been delivered, but before payment became due, a petition was presented to wind up the company. Defendants being mistakenly advised by their solicitor, wrote expressing a doubt whether they could safely make payment to the company, pending the petition; and asked the company to obtain an order of the Court to sanction their doing so. The company replied: "What will be the result of the petition, we cannot say. We must ask you to be good enough to observe your part of the contract by remitting us promptly." Replying to another letter of similar import from the defendants, the company said: "We shall, therefore, consider your refusal to pay for the goods already delivered as a breach of contract on your part, and as relieving us from any further obligations on our part." A few days thereafter, a winding up order was made, and defendants' solicitor wrote to the liquidator that the defendants claimed damages for non-delivery, and were prepared to accept and pay for all further deliveries without deducting damages, payments to be carried to a separate account without prejudice to claim for damages; and suggested that his clients might consent to accept delivery now and waive the damages. The liquidator refused to make further deliveries, and commenced an action to recover the price of what had been delivered. The defendants set up a counter claim for damages. *Held,* reversing the decision of Lord Cole-

ridge, C. J., that the plaintiffs were not entitled to rescind and were liable for damages for non-delivery.

It was held in the House of Lords that the refusal to pay in that case was not such as to bring it at all within the principle of *Freeth vs. Burr* and *Withers vs. Reynolds* Indeed, the postponement of payment under the circumstances of the case was not regarded as a refusal to pay, but only as a " demur or delay," under a misapprehension as to the legal effect of the proceedings for winding up the company, pending those proceedings. And from the opinion expressed in that case and the dissimilarity of the facts in this case from that, we may safely conclude that the refusal to pay in the case at bar, coupled with the buyer's demand, contained in its said letter of June 29th, takes it out of the case of *Mersey Steel Co. vs. Naylor*. Inasmuch, therefore, as it is quite manifest that this case does not come within the authority of *Mersey Steel Co. vs. Naylor*, it becomes necessary to inquire whether it comes within the principle of *Freeth vs. Burr* and *Withers vs. Reynolds*, or either of them, both of these cases having been recognized and approved in that case.

The facts in *Freeth vs. Burr* were: Plaintiffs agreed to buy of the defendant 250 tons of pig iron; half to be delivered in two, the remainder in four weeks; payment net cash fourteen days after delivery of each parcel. The delivery of the first parcel of about 125 tons was not completed for nearly six months, after repeated demands by plaintiffs. Upon the defendant asking for check under contract, the plaintiffs refused to pay, claiming a set-off, but urged the delivery of the balance of the iron. The defendant treated the refusal as an abandonment of the contract, and declining to make further deliveries, brought an action against the plaintiffs. The latter subsequently paid for the iron delivered and brought an action against the defendant for refusing to deliver the balance under the contract. *Held*, that the refusal to pay was not, under the circumstances, sufficient to warrant a rescission of the contract on the part of the defendant.

The facts in *Withers vs. Reynolds*, were: R. agreed to supply W. with straw to be delivered at the premises of W. at a price per load, each load to be paid for on delivery. R. shipped straw for some time, and when he asked for payment therefor W. tendered part only, retaining the price of the last load, and said he would always keep the price of one load in hand. The seller refused to make other deliveries. The buyer sued for non-delivery. *Held*, that the plaintiff could not recover, Lord Tenterden, C. J., saying: "The only question is whether upon the plaintiff's saying, 'I will not pay for the goods on delivery' (for that was the effect of his communication to the defendant), it was incumbent on the defendant to go on supplying straw ; and he clearly was not obliged to do so."

There is no mistaking the fact that the principle laid down in *Freeth vs. Burr*, and affirmed in *Mersey Steel Co. vs. Naylor*, was, as was stated by Lord Coleridge himself, in delivering his judgment in the former case, "The true question is whether the acts and conduct of the parties evince an intention no longer to be bound by the contract." This is undoubtedly the true test by which to determine the effect of the act and conduct of the parties when they do not manifestly amount to an express refusal to perform the contract upon the agreed terms. The substance of the test being as was said by Lord Chancellor Selborne in *Mersey Steel Co. vs. Naylor*, that, "You must look at the actual circumstances of the case in order to see whether the one party to the contract is relieved from its further performance by the conduct of the other ; you must examine what that conduct is, so as to see whether it amounts to a renunciation, to an absolute refusal to perform the contract. * * *" And in this view of the case we fully concur with the principle therein enunciated.

We have the opinion of Lord Coleridge, C. J., in that case that " in *Withers vs. Reynolds*, there was an express refusal by the plaintiff to perform the contract;" and he quotes Patterson, J., as saying, "If the plaintiff had merely failed to pay for any particular load, that of itself might not have been an excuse to the de-

fendant for delivering no more straw; but the plaintiff here expressly refuses to pay for the loads as delivered; the defendant, therefore, is not liable for ceasing to perform his part of the contract." He further adds, " Whitman, J., certainly, and Crompton, J., by inference, in *Jonasshon vs. Young, 4 B. & S., at page 299*, both uphold that case upon the principle on which I rely. The principle to be applied in these cases is, whether the non-delivery or the non-payment amounts to an abandonment of the contract or refusal to perform it on the part of the person so making default." And Denman, J., in the same case, said : " I am of opinion, upon the authority of *Withers vs. Reynolds*, that the ruling was quite right. That case did not decide expressly that a mere failure of the single payment might not be evidence of a refusal to perform the contract. But, in the words of Patterson, J., the conduct of the plaintiff, coupled with the non-payment, amounted to an express refusal to perform the contract on his part." And in an earlier part of the same case, referring to *Withers vs. Reynolds*, he said, " There the plaintiff did acts and said things which amounted to a declaration on his part that he did not mean to perform the contract." This last statement applies fittingly to the conduct of the buyer in the case at bar and quite clearly expresses the meaning and effect of said letter of June 29th.

The principle of *Freeth vs. Burr* is a correct statement of the law for guidance in determining the character of the refusal to perform and its effect upon the contract where the intention to be gathered from the acts and conduct of the party in default is not manifest; and *Withers vs. Reynolds* correctly states the law where the refusal to perform is coupled with conduct which amounts to an express refusal to perform the contract upon the agreed terms. The two cases are not in conflict as thus distinguished, and when carefully considered they must be so distinguished.

We are not unmindful of the fact that it has been contended that the admitted breach in this case was no more than a refusal to pay for a single installment of one hundred tons, and that it was

—unlike that in *Withers vs. Reynolds* — not prospective in its character. In our opinion it does not change the effect of the refusal whether it operates prospectively or not, if, in fact, it is coupled with a declaration of intention, amounting to an express refusal, not to be bound by the agreed terms of the contract.

The refusal to pay accompanied with such an announcement was the controlling element in *Withers vs. Reynolds*, such as we regard it in this case.

And *lastly*, we may say, that the buyer has his remedy for compensation in damages for a default as well as the seller, and, each enjoying this right on equal terms, neither may seek special advantage to the detriment, perhaps, of the other by deliberately imposing new terms upon the contract.

The Court below rightly found as conclusions of law, under the facts of this case, that the buyer repudiated the said contract, entitling the sellers to rescind it; and the

Judgment below is affirmed.