## NATIONAL MACHINE AND TOOL COMPANY *vs.* STANDARD SHOE MACHINERY COMPANY.

Suffolk.   November 21, 1901. — May 19, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Contract*, Construction, Performance and breach.  *Tender*.

An agreement by one owning a patent " to fully protect" a manufacturer making patented articles for him "from any suits on account of patents " does not call for a bond with a surety.

The plaintiff undertook to manufacture for the defendant certain parts of a patented machine the making of which involved considerable expenditure, on condition that the articles should be shipped as finished and the bills be settled promptly as they came to the defendant and that the defendant should arrange that the bills should be approved promptly and payments made on them at once so that the plaintiff might not have "too large an amount of money tied up on the work."  The plaintiff, having finished one item on the defendant's order, sent a bill for $90 stamped " all claims for corrections in this bill must be made within ten days from date."  Three or four days later the plaintiff asked for payment, complaining at the same time of another overdue account for nearly $700.  The defendant's representative apologized and explained the delay as accidental.  There were further complaints and explanations until the eleventh day, when the defendant's representative stated that the check was ready, but had been retained for entry as the bookkeeper was away.  This afterwards turned out to be true, but on the twelfth day the check did not arrive, and the plaintiff gave notice, that the defendant having broken the contract he should stop all work under it, and did so.  *Held*, that, although the defendant had not repudiated the contract, there might have been such a breach of it by an honest failure to pay as would warrant the plaintiff in a refusal to go on with the work ; and that a finding was warranted, that the defendant's failure to pay the $90 promptly was a breach going to the root of the contract which justified the plaintiff in refusing further performance and resorting to his right of action.  HOLMES, C. J., & LORING, J. *doubting*, on the last point, in view of the smallness of the

sum, the indefiniteness of the terms of the contract as to the time for payment, the shortness of the delay, and some other circumstances.

An action of contract, with a count for work done by the plaintiff on the order of the defendant, was begun by attachment. When seeking to reduce the amount of the attachment, the defendant expressed a willingness to pay for all work that had been completed. The plaintiff's counsel stated what that work amounted to so far as he knew, whereupon the judge made an order dissolving the attachment, upon payment of that amount to the sheriff and the giving of a bond for $5,000 more. The defendant paid the sum named including an item for work done, which he afterwards disputed at the trial. *Held*, that the transaction was not a tender, and seemed to have been only a substitution of securities in the sheriff's hands, and left the correctness of the figures open to trial with the rest of the case.

A tender not pleaded or kept good by a deposit of the money does not prevent the recovery of interest and costs.

CONTRACT by a corporation manufacturing machinery, especially shoe machinery, against a corporation selling shoe machinery, with two counts for work done and for work and materials, and a third count for damages from the defendant's alleged breach of a contract under which the plaintiff agreed to manufacture for the defendant certain parts of a patented machine, called the Bay State Lock Stitch Machine, at prices amounting in all to $12,529.70. Writ dated May 31, 1900.

In the Superior Court the case was heard upon an auditor's report by *Mason*, C. J. The judge found for the plaintiff in the sum of $1,018.62, that being the sum found due by the auditor, with interest from the date of the writ.

The auditor found that the defendant did not repudiate the contract, and that the delay in payment did not justify the plaintiff in stopping work. The judge stated, that he adopted "the particular findings and rulings of the auditor, though the ruling that the defendant's delay of payment for finished work did not justify the plaintiff in declining to proceed with so much of the contract as remained executory is made with some hesitation."

The judge found specially that the provision of the contract for prompt payment of bills for finished work was material and important to the plaintiff and that such payment was not promptly made.

At the request of the parties, the judge reported the case for the determination of this court. If either of the rulings was wrong the finding was to be corrected or the case was to stand

for assessment of damages as might be necessary; otherwise, judgment was to be entered on the finding.

The case was argued at the bar in November, 1901, and afterwards was submitted on briefs to all the justices.

*W. N. Buffum,* for the plaintiff.

*E. A. Whitman,* (*R. Walcott* with him,) for the defendant.

HOLMES, C. J.   This is an action of contract upon one or two small claims and for the breach of a contract made in March, 1900, by certain letters, in which the plaintiff undertook to manufacture certain portions of a patented machine, according to a schedule attached to the defendant's order.   This last is the main source of trouble.   With regard to payment the plaintiff wrote: "If you should favor us with an order for a considerable number of these parts, we would bill them up to you as they were finished, and would merely ask that the bills be settled promptly as they came to you."   At a later stage of the negotiation the plaintiff wrote that it should expect the defendant "to arrange it so that the bills would be approved promptly, and payment made on same at once, so that we may expect payments coming in rapidly after we have got well started on the contract, thus preventing us from having too large an amount of money tied up in the work."   In this letter the plaintiff also wrote that it expected the defendant "to fully protect us from any suits that might be brought against us while we are on this work, on account of patents."   It is denied that this letter was a part of the contract.   We see no sufficient reason for the denial.

About May 1, 1900, the plaintiff was sued and demanded a bond with surety, as protection under its agreement.   The defendant agreed to give a bond but on May 21 declined to furnish a surety, and this is relied on by the plaintiff as one breach of the defendant's undertaking.   We think it so plain that the defendant was not bound to give a surety that we dismiss this part of the case without further mention.

On May 17, 1900, the plaintiff having finished one item on the defendant's order, of sixty adjusting screws, sent a bill for the price, $90.   The bill bore a stamped notice that "all claims for corrections in this bill must be made within ten days from date."   It was understood by the plaintiff that if the bill was approved by the proper man it would be sent on to New York

to be paid. Three or four days later there was a conversation in the defendant's Boston office, it was suggested that this bill ought to be paid immediately on presentation and complaint was made with regard to another overdue account of nearly seven hundred-dollars ($697.23). There were apologies and further delays, complaints and explanations, the defendant's representative always explaining the delay as accidental, and finally, on May 28, stating that the check was ready but had been retained for entry as the bookkeeper was away. This last seems to have been true. On May 29 the plaintiff, hearing that a check had not come on, notified the defendant that " as you have not lived up to your agreement with us in relation to the work we are doing for you, we shall stop all of your work to-day," and stopped. Later efforts to come to an understanding failed.

The plaintiff when it stopped work had finished another small item of $24, and on May 31 offered to deliver these goods as well as those for which the bill for $90 had been sent, but the defendant declined to receive them. May 31 was the date of the writ, and the plaintiff very candidly says that the offer was made after suit was brought. The plaintiff seeks to recover as damages for the defendant's alleged breach the cost of the finished parts, and also the value of stock and castings and a large amount of work upon parts never delivered or completed.

The case was sent to an auditor. He found that the defendant did not repudiate the contract, and that the delay in payment did not justify the plaintiff in stopping work. The judge of the Superior Court adopted his rulings and findings, although finding in addition that the provision for prompt payment of bills for finished work was material, and that payment was not made promptly, and expressing a doubt whether the plaintiff was not justified in refusing to proceed.

Although the contract was not repudiated by the defendant, we are of opinion, notwithstanding *Winchester* v. *Newton*, 2 Allen, 492, which perhaps was not intended to establish a different general rule, (see also *Newton* v. *Winchester*, 16 Gray, 208,) that there might have been such a breach by failure to pay, as, however honest and however little it expressed a repudiation, would warrant a refusal to go on with the work. *Bloomer* v. *Bernstein*, L. R. 9 C. P. 588. See *Stephenson* v. *Cady*, 117 Mass. 6. There

is nothing to the contrary in *Daley* v. *People's Building, Loan & Saving Association*, 178 Mass. 13, 18. What is said there refers to an attempt to avoid a contract *ab initio* for a refusal to pay money due upon an executed consideration, when to make that payment is all that remains to be done on that side.

We may say further that for the purposes of this decision it is not necessary to consider Lord Selborne's somewhat sweeping suggestion in *Mersey Steel & Iron Co.* v. *Naylor*, 9 App. Cas. 434, 439, that when delivery of an instalment of goods under an entire contract is to precede payment for the goods delivered, as payment cannot be a condition precedent of the entire contract, it cannot be a condition precedent to the deliveries remaining to be made, at least without express words. See *Norrington* v. *Wright*, 115 U. S. 188, 210. In this case both parties have assumed that the plaintiff could put the defendant in default without delivery merely by sending a bill for an item when it was finished, so that Lord Selborne's logical difficulty, if there is anything in it, does not apply.

The question before us therefore is whether the defendant's failure to pay $90 promptly was a breach going to the root of the contract, — a breach so important as to warrant the plaintiff in refusing to go on without defeating his own right to recover upon it or rescinding the contract. My brother Loring and I have not been able to reach a clear conviction that it was such a breach, in view of the smallness of the sum, the indefiniteness of the terms of the contract as to the time for payment, (see *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382; *Parker* v. *Middlesex Mut. Ass. Co.* 179 Mass. 528, 531,) the shortness of the delay, and some other circumstances. Of course not every trifling breach of contract excuses the other side from further performance. *Honck* v. *Muller*, 7 Q. B. D. 92, 100. *Mersey Steel & Iron Co.* v. *Naylor*, 9 App. Cas. 434, 444. *Dubois* v. *Delaware & Hudson Canal Co.* 4 Wend. 285, 289. *Wright* v. *Haskell*, 45 Maine, 489, 492. *Weintz* v. *Hafner*, 78 Ill. 27, 29. *Worthington* v. *Gwin*, 119 Ala. 44, 54.

But my brethren are of opinion, and I dare say wisely, upon the findings, that the plaintiff was warranted in its course. The plaintiff's contract necessitated a considerable preliminary outlay, and would necessitate further expenditures in carrying out

its part. At the time it was paying nearly seventy dollars a day. Prompt payment for goods as finished took the place of payments on account. The plaintiff was sensitive, and had a right to be so, at any appearance of uncertainty as to the stipulated payments being made. It had a further ground of anxiety in the suits brought against it for infringement of patents, when it had only the defendant's personal guaranty to protect it. Under such circumstances, the failure to pay the other bill for nearly seven hundred dollars, gave a character to the failure to pay the smaller sum which was due, and imparted a significance to the delay that otherwise it might not have had. A failure to pay a small sum promptly because of difficulty in raising the money is not the same thing as, and may have a greater effect than, a similar failure simply because of the absence of a bookkeeper or of some misunderstanding between the defendant's Boston and New York houses.

The first count was upon a claim for $209.38 outside the contract thus far discussed. The auditor finds for the plaintiff, but for $129.15 only. The plaintiff demands the larger sum, notwithstanding the finding, on the ground that when seeking to reduce the plaintiff's attachment the defendant expressed a willingness to pay for all work that had been completed, that the plaintiff's counsel stated what that work amounted to so far as he knew, that thereupon the judge made an order dissolving the attachment upon the payment of that amount to the sheriff and the giving of a bond for $5,000 more, and that the defendant paid the sum, which included the item of $209.38. This transaction was not a tender and did not fall within the rule laid down in *Currier* v. *Jordan*, 117 Mass. 260, and *Bouvé* v. *Cottle*, 143 Mass. 310, 315. It would seem to have been only a substitution of securities in the sheriff's hands, and to have left the correctness of the figures open to trial with the rest of the case.

The second count also was for items outside the contract, and only one of them was disputed. This was for some articles not finished because the defendant, after the plaintiff refused to go on with its contract, took away jigs and tools which it had furnished the plaintiff under the contract, and also the unfinished articles. There is nothing in the report which necessarily implies that the failure to finish the articles was due to the plaintiff's fault,

or indeed to any other cause than the defendant's removal of them.   Therefore we cannot say that the auditor's finding was wrong.

A part of the damages to be recovered by the plaintiff on the larger contract will be for work done under it.   *Goodman* v. *Pocock*, 15 Q. B. 576, 580.   Therefore one other question requires a few words.   The defendant made a tender on May 31 of the amount then due, including the $90 claimed under the contract, which was refused.   But this tender has not been pleaded or kept good, even if, as does not appear very clearly, it embraced the sums now recovered.   Therefore it does not prevent the recovery of interest and costs.   The answer was a general denial.   *Brickett* v. *Wallace*, 98 Mass. 528, 529.   *Grover* v. *Smith*, 165 Mass. 132.   See *Noble* v. *Fagnant*, 162 Mass. 275, 286.   The payment to the sheriff was not a payment into court or an admission that the sum paid was due, as we have said and as the plaintiff contends.   In *Suffolk Bank* v. *Worcester Bank*, 5 Pick. 106, the amount tendered was deposited in a bank to the order of the plaintiff, and in *Goff* v. *Rehoboth*, 2 Cush. 475, the defendant was a town, and the treasurer might be presumed to have kept the money on hand in obedience to the order of the selectmen.   In both the tender was set up and the money brought into court.   See Pub. Sts. c. 168, § 23 ; *Town* v. *Trow*, 24 Pick. 168, 169 ; *Sanders* v. *Bryer*, 152 Mass. 141.   There was another tender after suit brought, but that did not comply with Pub. Sts. c. 168, § 24, and is not relied upon.

*Case to stand for assessment of damages.*