# CASES DETERMINED

AT THE

# January Term, 1901.

GLIDDEN, Appellant, vs. MEYER, Executor, Respondent.

*February 4 — April 9, 1901.*

*Entire contracts: Preventing performance: Court and jury: Estates of decedents.*

In an action to recover under a contract by which plaintiff agreed to act as housekeeper for defendant's testator during his life, hired help to be provided by him in case she was sick, in consideration of a certain sum per month and in addition $1,500 at his death unless she left her position before that time, there was evidence that plaintiff left the employ of deceased before his death; that she was sick and unable to do her work, though not confined to her bed, and that deceased did not provide help as he had agreed to do, and stated to others that she was only pretending to be sick, but no evidence that plaintiff asked for help and it was denied, or that it was impracticable for her to remain with the deceased and be treated for her illness. *Held,* insufficient to require submission to the jury of the question whether deceased wrongfully prevented plaintiff from performing the contract.

APPEAL from a judgment of the circuit court for Grant county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

This was a claim for services against the estate of one Solomon J. Griswold, deceased. Griswold died May 23, 1897, a resident of Lancaster, Wisconsin, leaving a will, which was thereafter duly probated. In 1896, the claimant, a half-sister of deceased, lived at Stockholm Center,

VOL. 110 — 1

New York, with her husband, being then about fifty-five years of age. In the fall of that year, Griswold, the testator, visited at the claimant's house in New York, and talked with her about going to live in Wisconsin at his house in the capacity of housekeeper. After the return of the testator to Wisconsin, there was correspondence between the parties on the subject, which resulted in the claimant, with her husband and youngest son, a young man, coming to Lancaster, January 13, 1897. They went at once to the testator's house, and the claimant took charge of the household affairs as housekeeper, there being no other woman in the house. On the 30th of January following the following written agreement was made between the parties, under seal:

"This agreement, entered into this day by and between S. J. Griswold, of Lancaster, Grant county, Wisconsin, and *Lucinda Glidden*, late of Stockholm, St. Lawrence county, New York, witnesseth that, in consideration of services to be rendered by *Lucinda Glidden* to S. J. Griswold as his housekeeper, as hereafter set forth, namely, that *Lucinda Glidden* shall act in the capacity of general housekeeper for S. J. Griswold, where he may choose to live during the remainder of his lifetime, meaning that she should care for his house, and do the work in and about his house, and look out for his personal comforts, in the same manner as she would for her own, then S. J. Griswold agrees to pay to *Lucinda Glidden* for such services the sum of six (6) dollars per month from the 15th day of January, 1897, payable monthly, and board for herself and her husband, George Glidden, while he may live in the house of S. J. Griswold with her, and with a further understanding that, should *Lucinda Glidden* be sick and unable to do the work of the house, S. J. Griswold will provide hired help to do the work; and, as a further consideration, S. J. Griswold agrees that *Lncinda Glidden*, for a faithful performance of this agreement, shall receive at his death the sum of fifteen hundred dollars, which shall be in full for her services and properly chargeable to his estate; it being the distinct understanding that, should *Lucinda Glidden* leave the position she assumes in the house of S. J.

Griswold before the death of S. J. Griswold, then she is not to receive the last-named consideration of fifteen hundred dollars, said S. J. Griswold to be holden only for the monthly payment of six dollars and board for self (*Lucinda Glidden*) and her husband, George Glidden, while living at the house of S. J. Griswold."

Mr. Glidden returned to New York in March, 1897. The claimant continued to act as housekeeper for Griswold until May 11, 1897, when she returned to the east with her son, claiming to be so sick as to be unable to do the work required of her. She did not return to Wisconsin prior to the testator's death, which took place May 25th following. The claimant filed her claim against the estate of Griswold in the county court to recover $1,500, the sum named in the agreement, $50 for expenses for return trip to New York, and $24 alleged to be due as weekly wages from January 5th to May 11th. By her formal complaint filed in the county court, she alleged that she performed her contract with Griswold until she left in May, 1897, and that she was prevented and excused by the acts of the deceased, and his failure and refusal to comply with the terms of said agreement, from remaining with deceased to the time of his death; that, prior to the time of her leaving Griswold's house, her health had been failing, and was very bad; that she repeatedly asked the deceased to procure help for her as he had agreed, but that he refused to do so, and that by reason of said refusal, and the consequent burden imposed on her, her health became seriously impaired, and she became on the 11th of May, 1897, unable to do the work, and is still unable to do manual labor and constantly under the care of physicians; that Griswold refused and neglected to provide suitable food for claimant and her husband, and prohibited their having more than two meals per day, and treated her husband with great incivility and disrespect, making it unpleasant for the claimant and her husband to live in the same house with the testator; that the testator

compelled her to clear sidewalks of snow, carry wood into the house from outdoors, and carry all the water for household purposes from a neighboring well, all of which were services not called for in said agreement, and overtaxed her strength; that prior to the 15th of May, 1897, it was arranged between the testator and herself that they should both return to the state of New York to spend the summer, it being understood that they would both leave Lancaster on a certain day of May, and that on the morning of the day so fixed the claimant, relying upon the arrangements, purchased her ticket and boarded the cars, but that the testator, Griswold, after promising to meet her at the train, failed to go East, as he had agreed; that all of the said acts of Griswold were calculated and designed by him to get rid of the claimant and bar her rights to said sum of $1,500.

The defendant alleged, by way of defense, that the claimant abandoned said contract, and the answer also denied the allegations of the complaint that the testator prevented the claimant from performing her contract, or sought by artifice to induce the claimant to abandon the same, and denied all ill treatment and failure of the testator to perform his part of the contract.

The claimant recovered judgment for $1,500 in the county court, and the executor appealed to the circuit court. Upon the trial in the circuit court, the claimant's evidence tended to show that she was afflicted with a chronic disease prior to coming West, and was not strong; that, in addition to the cooking, washing, and other general household work at the testator's house, she did heavy work, such as carrying in wood, shoveling snow, and bringing water from an outdoor well, and that she was sick, though not confined to the bed, the latter part of February; that she improved in health after this sickness, and continued to do the labor required, and after her husband left in March she became sick again,

though still able to be about the house; that no help was at any time provided for her; that when she left, on May 11th, she was physically unable to do the work; that other persons calling at the house noticed that she appeared to be sick and unable to do the work, but that the testator said to several persons that she was putting it all on. There was no testimony to show that the testator consented to her leaving the house and going East, or that he agreed to go with her, but there was testimony to the effect that he knew she was talking of going. There was no testimony tending to show that the testator refused to provide suitable food, or that he treated the claimant's husband with incivility, nor was there any testimony that the claimant objected at any time to the shoveling of snow or the carrying of wood and water, or that she ever asked for any help in the house or medical treatment. There was no evidence to show that she could not receive proper medical treatment and care at the testator's house.

At the close of the evidence, the circuit court nonsuited the claimant as to the $1,500 claim, and rendered judgment for the claimant for the amount due her for monthly wages.

For the appellant there was a brief by *Clark & Taylor*, and oral argument by *S. H. Taylor*.

For the respondent there was a brief by *Lowry & Clementson*, and oral argument by *E. M. Lowry*.

WINSLOW, J. There were a number of exceptions taken to rulings upon evidence, which, however, are unnecessary to be considered, because, under the view we have taken of the case, they can in no way affect the result.

The action is one upon an entire contract of service, by which, in addition to monthly wages, the claimant was to receive $1,500 for acting as housekeeper until Mr. Griswold's death, but was to receive nothing but monthly wages in case she left the position in Mr. Griswold's house before his death.

Glidden vs. Meyer.

That she left before Griswold's death is undisputed; so it is clear that she did not perform her contract, and hence cannot recover on the ground of full performance on her part. The only other ground upon which she can recover anything more than the monthly wages earned before her departure is upon the ground that the testator actually and wrongfully prevented her from performing the entire contract.

The whole subject of the remedies upon entire contracts for personal services has been so recently considered by this court that it is only necessary to refer to the case here, without restating the rules there laid down. *Hildebrand v. American F. A. Co.* 109 Wis. 171. Had the testator wrongfully discharged her or turned her from the house, this would have been a prevention by the testator of the fulfilment of the contract on her part; but he did not do so. The claim is, however, that his conduct amounted practically to compelling her to leave, and the question is whether there is evidence which should have gone to the jury substantiating this claim.

The only facts in evidence which can be said to tend in that direction are that the claimant was sick and unable to do her work, though not confined to her bed, and that the testator did not provide help as he had agreed to do, and that he stated to others that she was only pretending to be sick. Would a jury be entitled to find from these facts that she was compelled to leave? We think not. If there were evidence tending to show that she asked for help, and that it was denied, and that it was impracticable for her to stay at the house and be treated for her illness, we think there would be sufficient evidence of practical compulsion to go to the jury; but there is a total absence of testimony on those points. The claimant's illness was not such as to confine her to the bed, and not such as to make it necessarily palpable to an observer that she was unable to do the work. She apparently called no physician. No one, so far

as the evidence shows, informed the testator that she was unable to do the work. She seems to have performed the work required until her departure for the East. In this situation, the mere incredulity of the testator as to the serious character of her illness, and his omission to get help which was not asked, cannot, we think, afford any foundation for a verdict that he prevented her from fulfilling her contract.

We conclude that the nonsuit was properly granted.

*By the Court.*— Judgment affirmed.