JUNG BREWING COMPANY, Appellant, vs. KONRAD and others, Respondents.

*November 10—November 27, 1908.*

*Contracts: Ambiguities: Parol evidence: Sales: Breach: Waiver.*

1. A written contract for the purchase of 20,000 bushels of malt provided, in substance, that the price should be fifty-nine cents per bushel delivered free on board cars at Chestnut street station, Milwaukee, to be shipped one car per week beginning in the last week in November; that shipments were to be made in bags or in bulk "as ordered," and that the shipping directions given were "Via C., M. & St. P. R. R.," followed by a line headed with the word "To," which was left unfilled. *Held:*

(1) Taking all of the provisions of the contract together, and in connection with the significant, and apparently deliberate, omission of the place to which shipments were to be made, the contract was uncertain on its face.

(2) In that situation, evidence of the situation and surroundings of the parties as well as their communications, so far as

such communications threw light upon the situation, were competent to be received in order that the court might read the contract in the same light as the parties did when they made it.

(3) The meaning of the parties and the proper construction of the uncertain terms of the written contract was for the jury.

2. In such case the parol evidence admitted on the trial is *held* to be sufficient to show that shipping orders were to precede shipments.

3. In an action for breach of contract to deliver a quantity of malt, the evidence, stated in the opinion, is *held* to justify a finding that plaintiff, the purchaser, by its acts and conduct had, at the time the seller refused further performance, evinced an intention no longer to be bound by the contract.

4. There may be a breach of an executory contract by deliberate refusal to perform stipulations upon which the obligation of the other party depends, and, when such breach takes place, the other party has a right to treat the contract as wholly terminated and take measures accordingly.

5. In such situation, if the other party does not treat the contract as terminated, but continues to demand performance, he will be held to have kept the contract alive. He cannot treat the repudiation of the contract as a breach and as no breach at the same time.

6. Where, after a buyer had repudiated a contract for the delivery of malt, the seller neither did nor said anything indicating that he expected or demanded performance of the contract, he cannot be said to have treated, or waived his right to treat, the repudiation as a breach.

APPEAL from a judgment of the circuit court for Washington county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

Action for the breach of a contract for the sale and delivery of malt. Defense, breach of the contract by plaintiff. The plaintiff appeals from a judgment dismissing the complaint upon the merits after trial before a jury. The plaintiff owned and operated a brewery in Milwaukee and had some interest in a brewery at Covington, Kentucky, and desired to buy malt for both breweries. The defendants were partners engaged in manufacturing malt at Hartford, Wisconsin. After some preliminary negotiations the following contract was made by the parties upon a printed blank used

by the defendants in their business, the words in italics being the written part:

"MEMORANDUM OF SALE.

"Date *Nov. 23rd, 1906.*

"Sold to *Jung Brewing Co.*

"P. O. Address, *Milwaukee, Wis.*

"Quantity—*20,000 (twenty thousand) bushels.*

"Quality—*Shall show 69% extract fine gritz, 72% in dry substance, 5% moisture.*

"Price—*59 cents per bushel of 34 pounds, Delivered Milwaukee, 30 days or one cent per bushel off prompt cash.*

"F. O. B. *cars Chestnut Street Station, Milwaukee, Wis.*

"Terms of payment—*Prompt cash* or net from date of bill *thirty days.*

"When to be shipped—*One car per week beginning last week of present month.*

"In Bags or in Bulk? *As ordered.* The bags, when empty, to be bundled and returned to Konrad Bros. & Werner.

"Shipping Directions: *Via C., M. & St. P. R. R.*

"To ———.

"Remarks: *The yield of the malt shall be equal to the above stated yield in all respects, analyzed by Hantke's Brewers' School and Laboratories in Milwaukee, Wis., and shall be well screened.*

"*Konrad Bros. & Werner,*

"Per *Aug. Konrad,* Seller.

"Correct: *Jung Brewing Co.,* Purchaser.

"*F. Stresau, Treas.*"

On November 26th the plaintiff ordered a carload shipped to Milwaukee, and it was shipped on the 28th and paid for within a few days. Another carload was ordered December 24th, and this car was shipped to Milwaukee December 29th and also paid for. On January 8, 1907, the defendants wrote the plaintiff as follows: "You are way behind in ordering shipments of malt on contract, and hope you will try and make up." And on the following day the plaintiff replied, saying: "You can ship another car of malt the first of next week. We would have ordered out more before this, but we

are badly crowded for room." On January 16th the defendants shipped to Milwaukee a carload in response to this order, which arrived there on the following day. The plaintiff was dissatisfied with the quality of the malt in this third car, and, after unloading and testing it, claimed a reduction in the price on account of its inferior quality. A number of letters were exchanged on the subject and some interviews had, which resulted finally in the allowance by the defendants of a reduction of one cent per bushel and the acceptance of payment for the carload on that basis on February 5th. These three carloads contained in the aggregate 5,751 bushels. No more cars were ordered or shipped and no further correspondence or interviews took place between the parties until March 25th, when the plaintiff mailed a written order for one carload to be delivered at Milwaukee. On the following day the defendants replied, notifying the plaintiff that the contract was canceled "for the reason that you have not complied with the terms of the agreement." The market price of malt steadily advanced after January 1, 1907, and on the 25th day of March had advanced to eighty-five cents per bushel.

A special verdict was demanded, and five questions were submitted to the jury. In reply to the first question the jury found that it was the intention of the parties at the time the contract was made that the plaintiff should first give orders for the shipment of each car before the shipment took place. The second and third questions were only to be answered in case of a negative answer to the first question, and hence remained unanswered and are immaterial here. In answer to the fourth question the jury found that the defendants on and before March 26, 1907, were entitled to believe from the acts and conduct of the plaintiff that it did not intend to be bound by the terms of the contract; and in answer to the fifth question found that the market price of such malt in Milwaukee on March 26th was eighty-five cents

per bushel.　A motion for new trial on various grounds was overruled, and judgment for the defendants rendered upon the verdict.

*William L. Tibbs,* for the appellant, contended, *inter alia,* that, there being no ambiguity in the language or subject matter of the written contract sued upon, it was the duty of the court to give a legal construction to the same.　*Home Mut. Ins. Co. v. Roe,* 71 Wis. 33.　It was the duty of the defendants, under the contract, to ship and deliver one car of malt per week commencing the last week in November until the entire 20,000 bushels of malt were delivered, without demand on the part of the plaintiff.　24 Am. & Eng. Ency. of Law (2d ed.) 1068; *Jones v. Gibbons,* 8 Exch. 920; *Tyers v. Rosedale & F. I. Co.* 12 Eng. Rep. (Moak) 631; *McKee v. Retter,* 5 Gilm. (10 Ill.) 315; *Low v. Forbes,* 14 Ill. 423; *Vogt v. Schienebeck,* 122 Wis. 491.　The parties having merged their negotiations in a written contract, the terms of which, especially as to the time of shipment and place of delivery, were definite and certain, such terms could not be changed by parol evidence.　24 Am. & Eng. Ency. of Law (2d ed.) 1069; *Clark v. Cuson,* 3 Head (Tenn.) 55; *La Farge v. Rickert,* 5 Wend. 187; *Vogt v. Schienebeck,* 122 Wis. 491.　By the acts and actions of the parties to the contract in not insisting upon weekly deliveries as provided for by the terms of the contract, the question of time of performance, as far as it was of the essence of the contract, was waived, and neither party could put the other in default without some notice or demand of performance.　*Wichert v. Stafford,* 25 Ill. App. 218; *Bollman v. Burt,* 61 Md. 415; *Lawson v. Hogan,* 93 N. Y. 39; *Tyers v. Rosedale & F. I. Co.* 12 Eng. Rep. (Moak) 631; *Lindon v. Eldred,* 49 Wis. 305; *Jones v. Gibbons,* 8 Exch. 920; *O'Neill v. James,* 43 N. Y. 84; *Newton v. Wales,* 3 Rob. 453.　There was no such evidence of a failure to make payment, or refusal to be bound by the terms of the contract, as would justify a cancellation

of the contract or a submission of such question to the jury. *Mersey S. & I. Co. v. Naylor,* L. R. 9 App. Cas. 434; *Winchester v. Newton,* 2 Allen, 492; *Cherry Valley Iron Works v. Florence I. R. Co.* 64 Fed. 569; *O'Neill v. James,* 43 N. Y. 84; *Hoffman v. King,* 70 Wis. 372; *Flaherty v. Harrison,* 98 Wis. 559. Delay in making shipments and fulfilling the contract having been consented to by each of the parties, and the defendants not having refused fulfilment of the contract until March 26, 1907, the measure of damages would be the difference between the contract price and the market price on said 26th day of March, or within a reasonable time thereafter. *Roberts v. Benjamin,* 124 U. S. 64; *Trask v. Hamburger,* 70 N. H. 453; *N. W. I. & M. Co. v. Hirsch,* 94 Ill. App. 579; *Ogle v. Vane,* L. R. 2 Q. B. 275; *Newton v. Wales,* 3 Rob. 453; *Lindon v. Eldred,* 49 Wis. 305.

For the respondents there was brief by *Sawyer & Sawyer,* and oral argument by *H. W. Sawyer.* They contended, *inter alia,* that parol evidence was properly admitted showing the situation of the parties and the circumstances under which the contract was made, known to both parties and considered by them at the time the contract was made, for the purpose of aiding the court in construing the contract and applying it to the subject matter. *Loree v. Webster Mfg. Co.* 134 Wis. 173, 114 N. W. 449; *Boden v. Maher,* 105 Wis. 539, 543; *Vilas v. Bundy,* 106 Wis. 168; *Corbett v. Joannes,* 125 Wis. 370, 388; *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 556; *Chicago, St. P., M. & O. R. Co. v. C., M. & St. P. R. Co.* 113 Wis. 161, 170; *Rib River L. Co. v. Ogilvie,* 113 Wis. 482, 487; *Brittingham & H. L. Co. v. Manson,* 108 Wis. 221, 225; *Lyman v. Babcock,* 40 Wis. 503; *Zimmer v. Settle,* 124 N. Y. 37, 42. Evidence was also properly received to explain the ambiguity arising from the fact that the contract in suit does not state, *in terms,* where shipments were to be made, and in the use of the words "Delivered

Milwaukee" and "F. O. B. Chestnut Street Station, Milwaukee, Wisconsin," opposite and following the title "Price," instead of opposite the word "To," indicating destination. *Loree v. Webster Mfg. Co.* 134 Wis. 173, 114 N. W. 449, 450; *Pritchard v. Lewis,* 125 Wis. 604, 611, 612; *Edwards v. Wis. Inv. Co.* 124 Wis. 315, 319; *Germania Nat. Bank v. Mariner,* 129 Wis. 544, 547; *Murray Hill L. Co. v. Milwaukee L., H. & T. Co.* 110 Wis. 555, 565; *Chicago, St. P., M. & O. R. Co. v. C., M. & St. P. R. Co.* 113 Wis. 161, 169, 170; *Brittingham & H. L. Co. v. Manson,* 108 Wis. 221, 225; *Electrical A. Co. v. Standard E. Co.* 151 Mich. 662, 115 N. W. 982, 984; *Gould v. Boston E. Co.* 91 Me. 214, 64 Am. St. Rep. 221; *Head v. Miller,* 45 Minn. 546, 48 N. W. 192; *Callender, M. & T. Co. v. Flint,* 187 Mass. 104, 72 N. E. 345; *Union T. Co. v. Whiton,* 97 N. Y. 172.    As the defendants could not make shipments without knowing to what place shipments should be made, it was competent to prove by parol evidence that the agreement or understanding of the parties was that plaintiff should give directions where to ship before shipments were to be made, and that shipments should be made accordingly.    *Mueller v. Cook,* 126 Wis. 504, 509; *Corbett v. Joannes,* 125 Wis. 370, 388; *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 556; *Agnew v. Baldwin,* 136 Wis. 263; *Hubbard v. Marshall,* 50 Wis. 322, 325; 2 Whart. Ev. (3d ed.) sec. 1051; *Gould v. Boston E. Co.* 91 Me. 214, 64 Am. St. Rep. 221; *Callender, M. & T. Co. v. Flint,* 187 Mass. 104, 72 N. E. 345; *Head v. Miller,* 45 Minn. 546, 48 N. W. 192; *Kieth v. Kerr,* 17 Ind. 284, 286; *Lyon v. W. N. Y. & P. R. Co.* 88 Hun, 27; *Richter v. Union L. & S. Co.* 129 Cal. 367; *Musselman v. Stoner,* 31 Pa. St. 265.    The plaintiff being required to give notice or direction as to shipments and to make a demand upon which the defendant was required to act, the giving of such notice or demand was a condition precedent.    *Warren v. Bean,* 6 Wis. 120; *Blake v. Coleman,* 22 Wis. 415; *Trapp v. New Bird-*

*sall Co.* 109 Wis. 543, 553; *Kaukauna E. L. Co. v. Kaukauna,* 114 Wis. 327, 338, 339; *Hoffman v. King,* 70 Wis. 372, 392; *Krouskop v. Shontz,* 51 Wis. 204, 206; *Mueller v. Cook,* 126 Wis. 504, 511; *Donnelly v. Eastes,* 94 Wis. 390, 393; *Gates v. Parmly,* 93 Wis. 294, 306; *Nelson v. Stephens,* 107 Wis. 136, 145; *Mill Dam Foundry v. Hovey,* 21 Pick. 417; *Tipton v. Feitner,* 20 N. Y. 423, 425; *Nelson v. Plimplon F. E. Co.* 55 N. Y. 480; *Newton R. Works v. Graham,* 171 Mass. 352, 50 N. E. 547; *Husenetter v. Gullikson,* 55 Neb. 32, 75 N. W. 41; *Frommel v. Foss,* 102 Me. 176, 66 Atl. 382; *Alpena P. C. Co. v. Backus,* 156 Fed. 944; *Kellogg v. Frohlich,* 139 Mich. 612, 102 N. W. 1057, 1059. By incorporating into the written agreement the provision that plaintiff should direct how the malt should be shipped, whether in bags or bulk, that element became an essential part of the contract, as much as the kind and quality of the commodity to be shipped; and upon failure in respect thereto by plaintiff within the specified time, the defendants were entitled to regard and treat the contract as broken and terminated. *Davis v. Hubbard,* 41 Wis. 408, 411; *Davidor v. Bradford,* 129 Wis. 524, 527; *Woodman v. Blue Grass L. Co.* 125 Wis. 489; *Kaukauna E. L. Co. v. Kaukauna,* 114 Wis. 327, 339; *Frommel v. Foss,* 102 Me. 176, 66 Atl. 382; *Lawrence v. Miller,* 86 N. Y. 131, 139; *Hill v. Blake,* 97 N. Y. 216, 221, 222; *Lake Shore & M. S. R. Co. v. Richards,* 152 Ill. 59, 30 L. R. A. 33; *McGrath v. Gegner,* 77 Md. 331, 39 Am. St. Rep. 415, 417; *Newton R. Works v. Graham,* 171 Mass. 352, 50 N. E. 547; *Norrington v. Wright,* 115 U. S. 188; *Roehm v. Horst,* 178 U. S. 1; *Alpena P. C. Co. v. Backus,* 156 Fed. 944. When one party to an executory contract prevents the performance of it or puts it out of his own power to perform, the other party may regard it as terminated. *Davidor v. Bradford,* 129 Wis. 524, 527; *Woodman v. Blue Grass L. Co.* 125 Wis. 489; *Merrick v. N. W. Nat. Life Ins. Co.* 124 Wis. 221, 226;

*Kelley, M. & Co. v. La Crosse C. Co.* 120 Wis. 84; *Hinckley v. Pittsburgh B. S. Co.* 121 U. S. 264; *Lovell v. St. Louis Mut. L. Ins. Co.* 111 U. S. 264; *Louisville, N. A. & C. R. Co. v. Diamond State I. Co.* 126 Ill. 294, 18 N. E. 735; *Lawrence v. Miller,* 86 N. Y. 131; 9 Cyc. 639, 640, and notes 39, 40.

Winslow, C. J. The trial court held, in effect, that the written contract in question was uncertain and indefinite in its terms, so that it could not be determined therefrom whether it required the defendants to ship a carload of malt every week to the plaintiff at Milwaukee without further orders, or whether it required the plaintiff to order each carload by separate order before the defendants were required to ship it. So construing the contract, the court, against objection, permitted the introduction of a large amount of parol testimony relating to the situation of the parties and their negotiations resulting in the making of the contract, as well as testimony relating to the acts and correspondence of the parties after the contract in the way of practical construction thereof, and submitted to the jury the question of the proper construction of the contract in the light of this evidence.

These rulings were all challenged by the plaintiff on the ground that the contract is definite and certain in its terms, and required the defendants to deliver one carload per week at Milwaukee without further orders. This contention is based upon the written clauses of the written contract which follow the words "Price," "F. O. B.," and "When to be shipped" of the printed blank. These clauses provide, in substance, that the price shall be fifty-nine cents per bushel delivered free on board cars at Chestnut Street Station, Milwaukee, to be shipped one car per week beginning in the last week of November. If these clauses stood alone there would seem to be very good ground for the plaintiff's contention, but

they do not. Immediately following them, in response to the question "In Bags or in Bulk?" the contract says "as ordered," meaning unquestionably that the plaintiff is to specify by separate order whether a given carload is to be shipped in bags or in bulk. Following this, the shipping directions, "Via C., M. & St. P. R. R.," are given, and the line of the blank, headed with the word "To," is left unfilled. Taking all the provisions together, and in connection with the significant, and apparently deliberate, omission of the place to which shipments were to be made, it seems clear to us that the contract is uncertain on its face, and that it cannot certainly be told by reference to its terms alone whether the parties agreed that a separate order should precede the shipment of each car or not. In this situation, evidence of the situation and surroundings of the parties as well as their communications, so far as such communications throw light upon the situation, were competent to be received in order that the court might read the contract in the same light as the parties did when they made it. *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 93 N. W. 459. The parol evidence so received was amply sufficient to show that the understanding was that cars should be shipped either to the Milwaukee brewery or to the Covington brewery as the plaintiff should order, and that when shipped to Milwaukee the malt was to be shipped in bulk, and when shipped to Covington it was to be shipped in bags, and that in either event the defendants were to pay the freight to Milwaukee. Not only does this clearly appear, but it is also certain that the parties practically construed the contract to mean that shipping orders were to precede shipments by the letters of January 8 and 9, 1907, which are quoted in the statement of facts. Under such circumstances the question of the meaning of the parties and the proper construction of the uncertain terms of the written contract was for the jury. *Vilas v. Bundy,* 106 Wis. 168, 81 N. W. 812.

Some special objections were made to certain items of the parol testimony which was received, but we do not find it necessary to consider them. Upon the evidence which was unquestionably competent, the jury would not have been justified in coming to any different conclusion. There can be, in fact, no serious question but that, if parol evidence were competent, the contract must be construed as the jury construed it.

The sole remaining question which we deem it necessary to consider is whether there was a waiver by the defendants of the plaintiff's breach of the contract. The contract, as properly construed by the jury, required the plaintiff to order one carload per week beginning with the last week in November. A carload contained from 1,900 to 2,000 bushels, and, had a carload been ordered each week, the performance of the contract would have been completed during the first week in February. The plaintiff ordered one carload in November and one in December. On January 8th the defendants wrote, calling attention to the default, and in effect demanding that the plaintiff live up to the contract in the future. The plaintiff then ordered another carload, which upon delivery was claimed to be not up to contract requirements. A serious dispute arose on this question, which was finally settled by the defendants consenting to a slight reduction of price on February 4th. From this time until March 25th there was complete silence between the parties. The plaintiff gave no orders and the defendants made no demand for orders. On the 25th of March the plaintiff ordered a carload to be delivered, and on the following day the defendants declined to deliver any more and declared the contract canceled. Were they entitled to take this action at this time?

There may be a breach of an executory contract by deliberate refusal to perform stipulations upon which the obligation of the other party depends, and, when such breach takes place, the other party has a right to treat the contract as

wholly terminated and take measures accordingly.    But if
he do not treat the contract as terminated, but continue to de-
mand performance, he will be held to have kept the contract
alive.    He cannot treat the repudiation of the contract
as a breach and as no breach at the same time.    *Woodman
v. Blue Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104
N. W. 920; *Davidor v. Bradford,* 129 Wis. 524, 109 N. W.
576; *School District v. Hayne,* 46 Wis. 511, 1 N. W. 170;
*Kaukauna E. L. Co. v. Kaukauna,* 114 Wis. 327, 89 N.
W. 542.    Undoubtedly the defendants waived the breach
occurring prior to January 8th by their letter of that date,
but this letter cannot reasonably be held to waive further de-
faults, for it contains an unmistakable request to live up to
the contract in the future.    Had the plaintiff notified the de-
fendants that it would order no more cars, the defendants
would have been entitled to treat the contract as breached,
because their obligation to ship was dependent upon the re-
ceipt of orders.    While mere failure to make timely orders
might not of itself alone constitute a breach upon which de-
fendants could stand, there doubtless may be unequivocal
acts which will speak a definite refusal to further perform
just as loudly as words.    It has been held that the true ques-
tion is whether the acts and conduct of the party evince an
intention no longer to be bound by the contract.    *Hoffman v.
King,* 70 Wis. 372, 378, 36 N. W. 25.    By their answer to
the fourth question the jury found that there were such acts
in the present case, and the question must be whether that
finding was justified by the evidence.    Upon mature reflec-
tion we think it was.    After receiving the request of Jan-
uary 8, 1907, to make up the previous default in orders, the
plaintiff wrote excusing its default and ordered another car-
load, but found fault with the quality of the last shipment,
and said that "we must insist on the same quality as your
first shipment."    Upon receiving the carload sent in response
to this order the plaintiff wrote, complaining seriously of its

quality, and saying: "We cannot accept anything that is not according to the agreement." The dispute over the quality of this carload lasted ten days and became somewhat acrimonious, and was only settled by the defendants accepting a reduction in price, although both parties stood their ground. From January 9th until March 25th the plaintiff ordered no cars, although the market price was steadily advancing and the contract becoming daily more advantageous to the plaintiff and correspondingly disadvantageous to the defendants.

Under many circumstances the failure to send orders for two month's might be a very insignificant matter, but certainly that cannot be said here, where prompt ordering of a product, subject to great and rapid changes in market value, was evidently a very material part of the arrangement. In view of the nature of the contract, the evident intention that there was to be rapid delivery, the dissatisfaction with the January shipment, and the repeated declaration of the plaintiff that it would insist upon the delivery of a better quality of malt in the future, in the face of defendants' claim that the quality was unexceptionable, we think that there was ample ground for the defendants to conclude that the plaintiff's failure to order any more cars, or make any sign for a period of nearly two months after delivery should have been completed, under the terms of the contract, was a deliberate repudiation of the contract by the plaintiff upon which they were entitled to stand. As they neither did nor said anything thereafter indicating that they expected or demanded performance of the contract, it cannot be said that they treated the contract as still existing, or waived their right to treat the repudiation as a breach.

*By the Court.*—Judgment affirmed.