TILTON and another, Respondents, vs. J. L. GATES LAND
COMPANY and others, Appellants.

*April 21—October 5, 1909.*

*Appeal: Review: Immaterial errors: Right to review by party not
appealing: Findings, when disturbed: Entire contracts of em-
ployment: Brokers: Recovery of commissions: Breach of con-
tract: Wrongful attachment of land: Measure of damages:
Punitory damages.*

1. Where, in an action to recover commissions, it appeared that
   certain commissions became due before the trial, and the sales
   on which they were based were admitted without controversy
   as to the amount, objection that the commissions were not due
   at the time the action was commenced is technical and error
   in their allowance should be disregarded under sec. 2829, Stats.
   (1898).

2. The supreme court cannot inquire into alleged errors at the in-
   stance of a respondent who has not appealed from the judg-
   ment nor filed exceptions to the rulings alleged to be erroneous.

3. Where there is evidence to support a finding, and the finding is
   not clearly against the preponderance of the evidence, it will
   not be set aside.

4. A contract for commissions "to become due on one-quarter pay-
   ment of the selling price of any piece of land sold" is appor-
   tionable and not entire, and under it whenever a payment is
   made amounting to twenty-five per cent. or more of the selling
   price of a tract of land, the commission becomes not only due
   but payable.

5. If a contract of employment is for a term and is silent as to the
   time of payment, although the rate of compensation is at so
   much a day, week, or month, it is entire and indivisible and
   full performance must precede a right of recovery, in the ab-
   sence of circumstances showing that the contract was not un-
   derstood by the parties as entire; but if the contract contains
   language which obligates the employer to make partial pay-
   ments of compensation it is divisible and action may be main-
   tained on instalments as they become due before performance
   is completed.

6. Where the sufficiency of a complaint was not challenged by gen-
   eral demurrer, and the true contract of the parties, set up in
   the answer but imperfectly set up in the complaint, was es-
   tablished at the trial, and the parties litigated the issues aris-

ing out of such contract, error, if any, in overruling a de-
murrer *ore tenus* to the complaint on the ground that the im-
perfectly recited contract showed that plaintiffs had not per-
formed it, should be disregarded under sec. 2829, Stats. (1898).

7. An owner having breached his contract to pay to brokers in-
stalments of commissions as lands were sold, the brokers are
relieved from continuing to make sales and are entitled to com-
missions on sales made, although there was no showing that
the brokers were prevented from making further sales or were
hindered in performance by the owner's refusal to make pay-
ments as agreed.

8. An attachment of land does not deprive the owner of its use,
occupancy, or enjoyment, except that he may be unable to sell
until the attachment is dissolved; and interest on the value
of the land is not the basis for ascertainment of the damages
suffered in consequence of the attachment.

9. Compensatory damages allowed because of a wrongful attach-
ment should not exceed such actual damages as are the natural
and proximate result or consequence of the wrongful act in
suing out the attachment.

10. Punitory damages are not assessable as matter of right, and the
question of their allowance or disallowance is one for trial
courts and juries to pass upon. The supreme court will not
reverse a judgment for failure to award such damages, nor will
it undertake to make an assessment thereof.

APPEAL from a judgment of the circuit court for Clark
county: CHAS. M. WEBB, Judge. *Modified and affirmed.*

The material part of the complaint in the action alleged
that on or about March 22, 1900, the plaintiff *Lester Tilton*
entered into a contract with the defendants, whereby said
plaintiff was employed to show prospective purchasers such
lands as either of said defendants should require him to show,
and that defendants agreed to pay for such services, in the
event of a sale being made of any lands in Clark county
which the said plaintiff should be called upon to show pro-
spective purchasers, a commission of five per cent. of the sell-
ing price of the land as compensation for his services and ex-
penses if the purchaser had been procured through defend-
ants or their agents or employees, and ten per cent. of such
selling price on sales made through the efforts of the plaintiff

without aid from the defendants in procuring the buyer; that thereafter said *Tilton* formed a copartnership with his coplaintiff, *Roberts,* who assisted in carrying out said contract with the knowledge and consent of defendants; that plaintiffs sold lands pursuant to such agreement, and earned as commissions on account of such sales the amount of $6,000 over and above setoffs; and that plaintiffs did and performed all of the conditions of the contract on their part. Judgment was demanded for $6,000 upon the cause of action stated. A second cause of action was set up, but is not involved on this appeal.

The portion of the answer material, in so far as the questions presented on this appeal are concerned, sets forth that plaintiffs breached their contract by failing to forward to defendants moneys collected and notes received on land sales, and by failing to work exclusively for defendants in selling their lands, all of which they were required by said contract to do. For a first counterclaim the defendants set forth the various breaches of the contract complained of, and averred that by reason thereof they suffered damages to the amount of $30,000. As a second counterclaim the defendants set forth that the copartnership between the plaintiffs was formed July 16, 1900, and that on such date the account between the plaintiff *Tilton* and the defendants was stated, and it was agreed that there was then due defendants $3,036.49, which sum the plaintiffs, for a valuable consideration, agreed to pay the defendants. Furthermore, that the plaintiffs failed to account for moneys and notes coming into their hands as agents, and sold lands other than those in which defendants were interested, and induced prospective customers, sent to Clark county by the defendants at their expense, to buy lands in which defendants had no interest. Certain items of advances made by defendants to plaintiffs were also set forth as part of the counterclaim. The defendants' damages on the second counterclaim are placed at

$5,667.47, which sum includes the amount of the alleged account stated.

For the most part the reply consists of denials of the foregoing allegations of the answer. It admitted, however, that by virtue of the contract the plaintiffs were obliged to work exclusively for the defendants, but alleged a subsequent modification of such contract, by the terms of which plaintiffs were permitted to make such sales as they did make of lands belonging to parties other than the defendants.

The case was referred to a referee to hear, try, and determine. The referee found, among other things, (1) that after the written contract (which consisted of two letters passing between the parties) was made it was so modified that plaintiffs were authorized to sell other lands than those of the defendants, where the prospective purchasers refused to buy defendants' lands; (2) that plaintiffs made sales for defendants under said contract, upon which sales they were entitled to commissions amounting to $5,275.95; (3) that there was paid plaintiffs on account of their services $806.47, and no more; (4) that plaintiffs performed all the terms and conditions of their contract; (5) that plaintiffs were justified in refusing to continue work under the contract by reason of the failure and refusal of the defendants to pay past-due commissions for services thereunder, and that defendants were not entitled to any damages because of plaintiffs' refusal to continue work; (6) that defendants failed to sustain the allegations of their second counterclaim; (7) that the attachment levied in this action upon the defendants' property was not levied maliciously, and that defendants suffered no damages therefrom other than the costs and expenses incurred for counsel fees and disbursements in procuring the dissolution of the attachment, which damages were found to be $500. The referee found as a conclusion of law that the plaintiffs were entitled to judgment for $3,911.50, with interest and costs.

The defendants moved the court to vacate certain portions of the referee's report and to modify other portions thereof, and for judgment upon the report as modified. The plaintiffs likewise moved to modify the report in certain particulars and for judgment thereon as modified. The circuit judge disallowed one item of commission amounting to $120 which had been allowed by the referee, and allowed another item of commission which had been disallowed by the referee, amounting to $300. The total payments made by the defendants to the plaintiffs or either of them after the contract was made amounted to $2,806.81. This sum was also allowed defendants by the court as a payment upon the transaction sued on. The referee disallowed a large portion of this amount because he held that the defendants were indebted to the plaintiff *Tilton* in a large amount of money for services rendered prior to the 22d of March, 1900, when the written contract was made, and offset a portion of the payments made after that date against the indebtedness which he found existed at that time. No other modifications were made in the referee's report by the court, and judgment was entered in plaintiffs' favor for $2,426 damages, besides interest and costs, from which judgment defendants appeal.

For the appellants there was a brief by *Winkler, Flanders, Bottum & Fawsett,* attorneys, and *L. M. Sturdevant* and *James G. Flanders,* of counsel, and oral argument by *Mr. Flanders.*

For the respondents there was a brief by *Blatchley & Gilbertson,* attorneys, and *F. T. Tucker* and *Homer C. Clark,* of counsel, and oral argument by *Mr. A. H. Blatchley* and *Mr. Clark.*

The following opinion was filed May 11, 1909:

BARNES, J. Numerous errors of fact and of law are assigned. Those involving questions of fact can be grouped under three heads: (1) Erroneous allowance of commissions

not earned or due when suit was commenced; (2) failure to award damages against the plaintiffs for breaches of their contract, which it is claimed were established on the trial; and (3) refusal to hold that there was an account stated between the parties on July 16, 1900. The errors involving questions of law that it is deemed essential to discuss in view of the conclusions reached on questions of fact are: (1) Was a cause of action stated in the complaint? (2) Were plaintiffs justified in abandoning their contract before its expiration? (3) What was the measure of defendants' compensatory damages because of the wrongful attachment? (4) Should punitory damages have been awarded defendants because of malice on the part of the plaintiffs in making the attachment?

With reference to questions of fact little in the way of discussion need be indulged in. A statement of the conclusions reached should suffice. The record, containing over 1,400 pages, affords abundant opportunity for a lengthy opinion, but we fail to see where discussion would accomplish any useful purpose.

1. Commissions were allowed plaintiffs amounting to $202 on account of sales, where such commissions were not due at the time the action was commenced by reason of the necessary amount not having been paid on the purchase price of the lands sold. These commissions, however, became due and payable long before the trial of the action. The fact that the sales were made was admitted by the defendants on the trial, and there can be no controversy about the amount due on account of the same. We think that under the facts disclosed the objection is technical and the error is immaterial, and should be disregarded under sec. 2829, Stats. (1898), and the plaintiffs should be permitted to recover the amount of the items.

Commissions were erroneously allowed on sales to Henry Bentz, Charles Oleson, and William Klass, amounting to

$100.   We find no testimony in the record to sustain the al-
lowance of these items of commission, and respondents' coun-
sel does not point out any evidence that would warrant the
allowance.   The same is true of an item of $100 commission
allowed on a sale to George Reitz.   It seems quite apparent
that there is a duplicate allowance of commission amounting
to $100 on a single sale covering the same land; one allow-
ance being made on account of a sale to Kuhn & Reitz, and
the other because of the sale of the same land to George Reitz.
The evidence is reasonably satisfactory that the only sale
made was to the firm, and it does not appear to be disputed.
In reference to another item of commission amounting to
$35, which it is urged was erroneously allowed on a sale to
J. J. Kurtz, there is a scintilla of evidence in the record to
sustain the finding, in that the plaintiff *Tilton* testified that
he was entitled to the commission.   He does not, however,.
deny the facts, which were testified to in behalf of the defend-
ants, which show satisfactorily that plaintiffs were not en-
titled to the allowance.   It follows that items of commission
amounting to $235 were erroneously allowed and included
in the judgment.

As a sort of an equitable offset to these items, counsel for
the plaintiffs urge that certain items of commission amount-
ing to over $400, and to which plaintiffs were clearly en-
titled under the testimony, were disallowed and should be
offset against the errors committed against the defendants.
The plaintiffs do not appeal from the judgment, and neither
have they filed any exceptions to the alleged errors which
the referee and the court committed against them.   With
the record in this condition, we fail to see how the court can
inquire into the erroneous disallowance of commissions to
which plaintiffs were entitled.

2. The appellants insist that the respondents violated their
contract by levying an attachment on the appellants' prop-
erty; by making threats to prevent sales before and after

the levy; by inducing prospective buyers to purchase lands other than those of the appellants; by circulating reports that appellants were selling lands to which they had no title; by informing customers that some of the appellants' lands were no good; by maliciously attaching 7,240 acres of land worth over $60,000 to satisfy the claim sued on amounting to $6,000; and by preventing sales of land being made by reason of the attachment. A large amount of damages is claimed in one of the counterclaims interposed by reason of the aforesaid acts. The findings of fact on these various subjects are against appellants. As to some of the breaches complained of, we think they were quite conclusively established by the evidence. As to those which are so established, we are unable to find that any legitimate items of damage were proven.

3. There is sufficient evidence to support the finding of the referee that no account was stated between the parties in July, 1900. The same is true of the finding to the effect that defendants consented to a modification of the written agreement so as to permit the plaintiffs to negotiate sales of improved farm lands where they were unable to sell the wild lands of the defendants. To our minds the evidence is neither clear nor satisfactory in support of the finding that plaintiffs were authorized to sell wild lands other than those of the defendants, and it is altogether improbable. The evidence is conclusive that at least two such sales were made, and we should have been better satisfied had the finding been that plaintiffs breached their contract in this regard. However, there is evidence to support the finding made, and it is not so clearly against the preponderance of evidence that it should be set aside. Under all the circumstances disclosed by the evidence, the damages recoverable for the breach, if one existed, might well have been found to be only nominal.

4. It is urged that the contract as established on the trial is entire, and that there was nothing due plaintiffs there-

under until the expiration of one year from its date, and that
the plaintiffs, having abandoned performance before the year
expired, cannot recover.   The contract, after providing the
amount of commission that should be paid on sales as made,
also recited that such commissions were "to become due on
one-quarter payment of the selling price of any piece of land
sold."   We think this language, as used in this particular
contract, is plain and unequivocal, and means that, when-
ever a payment was made amounting to twenty-five per cent.
or more of the selling price of the tract of land, the commis-
sions on the sale would not only become due, but would also
become payable to the plaintiffs.   The plaintiffs evidently
so understood the language, and the defendants from time to
time made payments which would indicate, although perhaps
not conclusively establish, that they placed the same construc-
tion thereon.   If there is any doubt upon the point, it is
really eliminated by testimony given by the officers of the
defendant companies on the witness stand, which unmistak-
ably showed that their construction of this particular clause
was not different from that of the plaintiffs.

The distinction between an entire and an apportionable
contract is pointed out in *Hildebrand v. Am. F. A. Co.* 109
Wis. 171, 85 N. W. 268, where the rule as stated in Wood
on Master and Servant (§ 84) is quoted and approved in the
following language:

" 'If the contract is for a term, although the rate of com-
pensation is at so much a day, week, or month, yet, if the
contract is silent as to the time of payment, it is entire and
indivisible, and full performance must precede a right of
recovery,' in the absence of circumstances showing that the
contract was not understood by the parties as entire."

If, however, the contract contains language which obligates
the employer to make partial payments of compensation, then
it is divisible, and action may be maintained on instalments
as they become due before performance is completed.   *La*

*Coursier v. Russell,* 82 Wis. 265, 52 N. W. 176; *Clark v. Clifford,* 25 Wis. 597.

It is urged, however, that the contract established on the trial was not the contract which was made part of the complaint in this action, there having been omitted from the copy annexed to the complaint the words above quoted, and that, while the complaint in terms alleged performance on the part of the plaintiffs, still the contract which was made a part thereof affirmatively showed that plaintiffs had not performed, and that therefore the demurrer *ore tenus* should have been sustained. Under the decisions of this court in the cases of *Goodwin v. Merrill,* 13 Wis. 658, and *Clark v. Clifford,* 25 Wis. 597, we think that even the contract annexed to the complaint was an apportionable contract. The appellants rely on the cases of *Hildebrand v. Am. F. A. Co.* 109 Wis. 171, 85 N. W. 268; *Widman v. Gay,* 104 Wis. 277, 80 N. W. 450; *Glidden v. Meyer,* 110 Wis. 1, 6, 85 N. W. 656; *Koplitz v. Powell,* 56 Wis. 671, 14 N. W. 831; *Diefenback v. Stark,* 56 Wis. 462, 14 N. W. 621; *Jennings v. Lyons,* 39 Wis. 553; *Green v. Hanson,* 89 Wis. 597, 62 N. W. 408; *McDonald v. Bryant,* 73 Wis. 20, 40 N. W. 806; *Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1, 97 N. W. 515; *Williams v. Thrall,* 101 Wis. 337, 76 N. W. 599; *Warehouse & B. S. Co. v. Galvin,* 96 Wis. 523, 71 N. W. 804; *Cohn v. Plumer,* 88 Wis. 622, 60 N. W. 1000; and *Malbon v. Birney,* 11 Wis. 112, in support of the proposition that the contract was an entire one. The question is not material to a decision of the case. The sufficiency of the complaint was not challenged by the general demurrer. The true contract was set up in the answer and was established on the trial, and the parties litigated the issues arising out of the contract set forth in the answer. We entertain no doubt that such contract was apportionable. Under these circumstances, if error was committed in overruling the demurrer *ore tenus,* we should hold on this appeal that it was

a technical and harmless error which should be disregarded under sec. 2829, Stats. (1898). A reversal because of the error complained of would simply mean that the plaintiffs should be permitted to amend their complaint so as to make it conform to the recitals of the answer as to what the contract was, and that the parties should be subjected to a retrial of the issues that were fully litigated in the former trial.

5. It is urged that it was error to find as a conclusion of law that the mere failure to pay commissions relieved the plaintiffs from continuing to perform the contract on their part, in the absence of proof that plaintiffs were prevented from performance or that they were hindered in performance by the refusal of defendants to make payments as agreed. In support of the contention the following cases are cited: *Stephenson v. Cady,* 117 Mass. 6, 9; *Winchester v. Newton,* 2 Allen, 492, 494; *Myer v. Wheeler,* 65 Iowa, 390, 21 N. W. 692; *Osgood v. Bauder,* 75 Iowa, 550, 39 N. W. 887; *Blackburn v. Reilly,* 47 N. J. Law, 290, 1 Atl. 27; *Mersey S. & I. Co. v. Naylor,* L. R. 9 Q. B. Div. 648. The majority of these cases hold that, where a contract is made for the sale of goods which is to be executed by a series of deliveries and payments, default by either party with reference to one or more of the stipulated acts will not ordinarily discharge the other party, unless the conduct of the party defaulting be such as to evince an intention to abandon the contract or a design to be no longer bound by its terms. In *Myer v. Wheeler, supra,* it is held that the rescission of a divisible contract will not be permitted for a breach thereof unless such breach goes to the whole consideration. The Massachusetts case cited is not in harmony with the other cases. In that state it is held that if a contract for the sale of personal property requires deliveries from time to time and provides for payments being made at stated intervals, failure to pay for any instalment of goods shipped when payment is due excuses the vendor from making further deliveries un-

der the contract. *Stephenson v. Cady, supra; Morton v. Clark,* 181 Mass. 134, 63 N. E. 409; *Nat. M. & T. Co. v. Standard S. M. Co.* 181 Mass. 275, 63 N. E. 900; *Nat. C. Co. v. Vulcanite P. C. Co.* 192 Mass. 247, 78 N. E. 414. This court has held that where a person was employed at a stated salary per year, payable quarterly, the employee was justified in refusing to continue work under the contract after a quarterly instalment of his wages had become due and payment was refused. Such decision was reached in a case where there was no showing made on the part of the employee that he could not continue performance without embarrassment because of the fact that he was unable to get the salary due him. *La Coursier v. Russell,* 82 Wis. 265, 52 N. W. 176. We think this case is decisive of the question presented and that it is well supported by other authority. See, further, *Jung B. Co. v. Konrad,* 137 Wis. 107, 118 N. W. 548.

6. The referee allowed the defendants $500 for attorney fees and other expenses incurred in securing a dissolution of the attachment placed upon their property. Otherwise no damages were allowed because of the attachment, which remained upon the attached property about five months. Refusal to allow additional damages is assigned as error. It appeared from the testimony that the lands attached were rapidly appreciating in value while they were tied up. Counsel contend, however, that interest upon the value of the attached property while the attachment rested on it should at least be allowed. It is argued that such is the rule of damages applicable in the case of a wrongful attachment of personal property, and the cases of *Booth v. Ableman,* 20 Wis. 602, 609; *Beveridge v. Welch,* 7 Wis. 465; *Anderson v. Sloane,* 72 Wis. 566, 40 N. W. 214; and *Union Nat. Bank v. Cross,* 100 Wis. 174, 75 N. W. 992, are cited to support the contention made. It is urged that there is no difference in principle between the two kinds of attachment, and that

the rule should be extended so as to include real estate. We think there is a substantial reason why interest should be allowed as damages as to one species of property and should not be allowed as to the other. Compensatory damages are allowed as compensation. When personal property is attached, the owner is deprived of its possession, use, and enjoyment, and it is right that he should be compensated for the loss of the use of that which was taken from him by allowing interest on the value thereof when such allowance furnishes adequate compensation for the actual damage sustained. A wrongful attachment of personal property is somewhat akin to a forced loan of it. Interest may not be adequate compensation, and, when it is not, other damages are allowed. When interest is adequate to liquidate the damages, it may well be considered the minimum recovery for the deprival of the owner of the use of his property. An attachment on real estate does not deprive the owner of the use, occupancy, or enjoyment of the property in any sense, save that he may not be able to sell it until the attachment is dissolved or released. If a sale has been prevented by the attachment, the loss consequent upon such prevention is ordinarily capable of reasonably definite ascertainment and proof. The compensatory damages allowed because of a wrongful attachment should not exceed such actual damages as are the natural and proximate result or consequence of the wrongful act in suing out the attachment. We do not think that interest on the value of the real estate attached can be said to furnish any safe basis for ascertainment of the damages suffered in consequence of the attachment.

7. It is urged that the attachment was maliciously levied and that it was error to refuse to award punitory damages. There are many items of evidence, aside from the fact that the value of the property attached was more than ten times the amount of the claim sued on, which tend to show that the plaintiffs were actuated by improper motives in making the

attachment. The findings are against the defendants on the point. Whether they are right or wrong is an academic question. Courts generally hold that punitory damages are not assessable as a matter of right, and this court has so held in *Robinson v. Superior R. T. R. Co.* 94 Wis. 345, 68 N. W. 961, where the authorities on the point are reviewed. The question of the allowance or disallowance of punitory damages is one for trial courts and juries to pass upon, and this court will not reverse a judgment for failure to award such damages, nor will it undertake to make an assessment of the same.

The judgment in the action awards plaintiffs $2,426 damages, together with interest thereon from February 21, 1903, the date of the filing of the referee's report, together with the costs of the action, taxed at $393.29. Interest was allowed by the referee in his computation from December 29, 1900, the date of the commencement of the action, and such interest is included in said sum of $2,426. The judgment should therefore be decreased by the sum of $235, together with interest thereon between the dates last mentioned at the legal rate, amounting to $30.27, making in all the sum of $265.27.

*By the Court.*—The judgment of the circuit court is modified by awarding the plaintiffs the sum of $2,160.73, together with interest thereon from February 21, 1903, and the costs of the action as taxed; and as so modified the judgment of the circuit court is affirmed. The appellants are awarded costs in this court.

A motion for a rehearing was denied October 5, 1909.